**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KENNETH SANCHEZ and
KATHY SANCHEZ

     Plaintiffs,

vs.                               No. CIV 24-0255 JB/KRS

EP EXPEDITED TRANSPORT LLC,
ROGELIO MARTINEZ, XPO LOGISTICS
FREIGHT, INC., RXO CAPACITY
SOLUTIONS, LLC, ROCK SAFETY
SOLUTIONS, LLC, ABC CORPORATIONS,
123 PARTNERSHIPS, and
XYZ LIMITED LIABILITY COMPANIES,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) the Defendant XPO Logistics Freight, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint, filed December 29, 2025 (Doc. 129)("XPO MTD"); and (ii) Defendant RXO Capacity Solutions, LLC Motion to Dismiss Plaintiffs' Second Amended Complaint, filed December 31, 2025 (Doc. 130)("RXO MTD"). The Court holds a hearing on March 25, 2026. <u>See</u> Clerk's Minutes at 1, filed March 25, 2026 (Doc. 149)("Clerk's Minutes"); Draft Hearing Transcript of Proceedings at 1 (taken March 25, 2026)(Court)("2026 Tr.").[1] The primary issues are: (i) whether the Court should dismiss the Plaintiffs' Second Amended Complaint, filed November 14, 2025 (Doc. 117)("SAC") against Defendants RXO Capacity, LLC ("RXO Capacity"), and XPO Logistics Freight, Inc. ("XPO Freight")(collectively the "MTD Defendants"), under rule 12(b)(6) of the Federal Rules of Civil Procedure, where the MTD Defendants assert the statute of limitations bars the Plaintiffs Kenneth

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Sanchez and Kathy Sanchez' (collectively the "Plaintiffs") claims against the MTD Defendants; and (ii) whether the Court should dismiss the SAC against the MTD Defendants, under rule 12(b)(5) of the Federal Rules of Civil Procedure, where the MTD Defendants assert the Plaintiffs do not properly serve the MTD Defendants. After reviewing the parties' submissions and the applicable law, the Court concludes that: (i) it does not dismiss the SAC against the MTD Defendants, under rule 12(b)(6) of the Federal Rules of Civil Procedure, where the MTD Defendants assert the statute of limitations bars the Plaintiffs' claims against them, because the SAC relates back to the Plaintiffs' First Amended Complaint, filed September 19, 2024 (Doc. 53)("FAC"), preventing the statute of limitations from baring the Plaintiffs' claims against the MTD Defendants; and (ii) the Court does not dismiss the SAC against the MTD Defendants, under rule 12(b)(5) of the Federal Rules of Civil Procedure, where the MTD Defendants asserts the Plaintiffs do not properly serve the MTD Defendants, because rule 4 of the Federal Rules of Civil Procedure does not require the Plaintiffs to identify the actual individual who accepts service of process. Accordingly, the Court denies both the XPO Motion and the RXO MTD.

## FACTUAL BACKGROUND

The Court takes its facts from the SAC. The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely the Plaintiffs' version of events.

### 1.    The Accident.

On October 18, 2021, at approximately 6:00 a.m., Kenneth Sanchez is driving his 2007 Nissan in the left-hand lane of northbound Interstate 25 ("I-25") in Los Lunas, Valencia County, New Mexico. SAC ¶ 23, at 5. At approximately the same time, Defendant Rogelio Martinez is driving northbound on I-25 in a loaded 2015 Kenworth T680 tractor-trailer ("Kenworth Truck")

in the right-hand lane.  SAC ¶ 24, at 5.  The posted speed limit on I-25 where the crash occurs is 75 miles per hour.  See SAC ¶ 25, at 5.  While driving alongside Kenneth Sanchez' vehicle, Martinez does not maintain the Kenworth Truck in the right-hand lane and crosses over into the left-hand lane.  See SAC ¶ 27, at 5.  As a result, the Kenworth Truck strikes Kenneth Sanchez' vehicle (the "Accident").  SAC ¶ 28, at 5.  As a result of the Accident, Kenneth Sanchez suffers physical injuries.  See SAC ¶ 30, at 5.

        **2.**        **The List of Companies the Accident Involves.**

At the time of the Accident, XPO Freight and RXO Capacity are XPO, Inc's subsidiaries. See SAC ¶ 14, at 3.  XPO, Inc. is a nationwide logistics, freight, and shipping company "that advertises that it is involved in every level of trucking shipment and delivery . . . ."  SAC ¶ 15, at 4.  At the time of the Accident, RXO Capacity is named XPO Logistics, LLC.  See SAC ¶ 16, at 4.  In November, 2022, XPO Logistics, LLC changes its name to RXO Capacity.  See SAC ¶ 16, at 4.  At the time of the Accident, XPO Logistics, LLC is a registered broker operating under "U.S. DOT # 2265719" and is subject to the Federal Motor Carrier Safety Regulations ("FMCSR"). SAC ¶ 17, at 4.  RXO Capacity is a registered broker operating under "U.S. DOT # 425389."  SAC ¶ 18, at 4.  XPO Freight is "a registered motor carrier operating under U.S. DOT# 241829 and MC# 165377 and subject to the FMCSR."  SAC ¶ 19, at 4.

Defendant Rock Safety Solutions ("Rock Safety") advertises itself as a "safety service company" that assists motor carriers with "DOT compliance."  SAC ¶ 20, at 4.  Defendant EP Expedited Transport, LLC ("EP Transport"), is a customer of Rock Safety Solutions' safety and compliance services.  SAC ¶ 21, at 4.  Rock Safety provides "various services" to EP Transport, "including, but not limited to, hiring and training drivers, including providing all training materials; and maintaining driver qualification files and other driver compliance documentation."

SAC ¶ 22, at 4.

### 3. The Chain of Events Before the Accident.

EP Transport owns the Kenworth Truth and is Martinez' employer. See SAC ¶ 32, at 5. The load that Martinez is carrying at the time of the Accident totals "approximately 7,763 pounds" (the "Load"). SAC ¶ 33, at 5. Martinez picks up the load on or about October 16, 2021. See SAC ¶ 34, at 5.

"Freightliner" hires XPO Freight as a motor carrier to transport the Load from the "EXEL facility at 7802 West Bob Bullock Loop in Laredo, Texas to Freightliner Parts Distribution at 14444 Leat Boulevard in Reno, Nevada." SAC ¶ 35, at 6. As an alternative, "Freightliner" hires XPO Freight or RXO Capacity "to arrange for a different motor carrier to transport the Load from Laredo, Texas to Reno, Nevada." SAC ¶ 36, at 6. "The paperwork affiliated with the Load, Manifest 043.101621.0780.XPOL.EP5375, identified the 'Out-bound Motor Carrier' as 'XPOL.'" SAC ¶ 37, at 6.

At some time before October 16, 2021, XPO Freight and/or RXO Capacity enter into an agreement with EP Transport where XPO Freight and/or RXO Capacity agree to "tender freight for transport to EP Transport and EP Transport agreed to provide transportation of the Load as a motor carrier." SAC ¶ 38, at 6. XPO Freight or RXO Capacity contract with EP Transport to use a commercial motor vehicle that EP Transport owns, leases, or otherwise controls, and a driver it employs, leases, or otherwise controls to transport the Load from Laredo, Texas to Reno, Nevada. See SAC ¶ 39, at 6. XPO Freight or RXO Capacity agrees to pay EP Transport from the proceeds that XPO Freight or RXO Capacity receives from "Freightliner to transport the Load from Laredo, Texas to Reno, Nevada." SAC ¶ 40, at 6.

### FINDINGS OF FACT FOR THE RULE 12(b)(5) MOTION

There are several factual issues the Court must resolve to decide the XPO MTD and the RXO MTD. Although the substance of the XPO MTD and the RXO MTD is largely the same, there are minor differences in the facts, such as service for XPO Freight occurring on December 8, 2025, see Affidavit of Service by Process Server, Scott Mitchell (executed on December 16, 2025), filed December 16, 2025 (Doc. 128)("Mitchell Aff."), while service for RXO Capacity occurs on December 9, 2025, Affidavit of Service by Process Server, Nicole Bernado (executed on December 9, 2025), filed December 12, 2025 (Doc. 126)("Bernado Aff."). The Court makes separate Findings of Fact ("FOF") only for remarkable differences. The Court makes the following findings of fact:

1.      On November 20, 2023, Kenneth Sanchez files the original complaint in State court. See XPO MTD ¶ 1, at 1; Plaintiffs' Response to XPO Logistics Freight, Inc's Motion to Dismiss Plaintiffs' Second Amended Complaint at 2, filed January 21, 2026 (Doc. 136)("XPO Response"); Plaintiffs' Response to RXO Capacity Solutions, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint at 2, filed January 21, 2026 (Doc. 135)("RXO Response").

2.      The State court complaint involves the Accident. See XPO MTD ¶ 1, at 1-2; XPO Response at 2; RXO Response at 2.

3.      On March 13, 2024, EX Transport removes the original complaint to federal court. See XPO MTD ¶ 5, at 2; XPO Response at 2.

4.      On August 26, 2024, Kenneth Sanchez files the Plaintiff's Unopposed Motion to Amend the Complaint (Doc. 45). See XPO MTD ¶ 5, at 2.[2]

5.      The FAC adds XPO Logistics, Inc. ("XPO Logistics"), and RXO, Inc. as

---

[2] The Plaintiffs in the XPO Response and the RXO Response incorrectly cite the filing date as August 16, 2024. See XPO Response at 2; RXO Response at 2.

defendants.  See XPO MTD ¶ 5, at 2-3; XPO Response at 2; RXO Response at 2.

6.      On October 7, 2024, the Plaintiffs serve the FAC upon XPO Logistics and RXO, Inc. through Evilsizor Process Servers, LLC's ("Evilsizor Servers") process agent, Peggy Burns, at 4201 N. Prince, Clovis, NM 88101.  See Affidavit of Service by Process Server, George Rowan (executed October 8, 2024), filed October 10, 2024 (Doc. 65)("First Rowan Aff."); Affidavit of Service by Process Server, George Rowan (executed October 8, 2024), filed October 10, 2024 (Doc. 66)("Second Rowan Aff.").[3]

7.      On April 18, 2025, the Plaintiffs file their second motion to amend, which the Court grants, resulting in the Plaintiffs filing the SAC.  See XPO MTD ¶¶ 9-10, at 4-5; XPO Response at 3; RXO Response at 3.

8.      On December 8, 2025, Mitchell, on behalf of the Plaintiffs, serves process upon XPO Freight through "Mark Doe (Refused Last Name)," "intake specialist," at 838 Walker Rd., Suite 21-2, Dover, DE 19904.  Mitchell Aff.[4]

---

[3] The Court concludes that the Plaintiffs serve XPO Logistics and RXO Capacity through Evilsizor Servers on October 7, 2024.  The MTD Defendants argue that "Peggy Burns was not authorized to accept service" for either XPO Logistics, Inc. or RXO Capacity.  XPO MTD ¶ 6, at 3.  See RXO MTD ¶ 6, at 3.  This assertion is contrary to the public information that the Plaintiffs provide.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint, filed May 16, 2025 (Doc. 104)("SAC Reply").  In the SAC Reply, the Plaintiffs provide information from the FMCSA's website regarding service of process.  See SAC Reply at 3.  Specifically, FMCSA's website shows that XPO Logistics and RXO Capacity list "Evilsizor Process Servers LLC" as the blanket company to receive service of process on their behalf. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint at 1-2, filed May 16, 2025 (Doc. 104-1)("FMCSA Screenshot").  Further, the FMCSA's website lists Burns, located at 4201 N. Prince, Clovis, NM 88101, as Evilsizor Servers' New Mexico process agent.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint at 1-2, filed May 16, 2025 (Doc. 104-2)("List of Process Agents").  Accordingly, the Court concludes that the Plaintiffs serve XPO Logistics and RXO Capacity through Evilsizor Servers on October 7, 2024.

[4] XPO Freight asserts that this service is not proper, as a matter of law.  See XPO MTD ¶ 26, at 9.  The Court addresses XPO Freight's legal arguments below.

9.      On December 9, 2025, Nicole Bernado, on behalf of the Plaintiffs, serves process upon RXO Capacity through "Jane Doe (Refused Name), Intake Specialist and Authorized Agent," "who stated they are authorized to accept service" for RXO Capacity, at 251 Little Falls Dr., Wilmington, DE 19808.  Bernado Aff.[5]

### LAW REGARDING 12(b)(5)

Rule 12(b)(5) provides, in pertinent part: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion . . . (5) insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  "Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process."  Whitsell v. United States, 198 F.3d 260, at *1 (10th Cir. 1999)(unpublished).  "'A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint.'"  Martinez v. CitiMortgage, Inc., 347 F. Supp. 3d 677, 686 (D.N.M. 2018)(Browning J.)("Martinez")(quoting Oltremari by McDaniel v. Kansas Soc. & Rehab. Serv., 871 F. Supp. 1331, 1349 (D. Kan. 1994)(Lungstrum, J)).

Where a plaintiff does not meet this burden, a court may dismiss for failure to serve properly.  See Martinez, 347 F. Supp. 3d at 686 (citing Lasky v. Lansford, 76 F. App'x. 240, 240-41 (10th Cir. 2003)).  "'Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice.'"  Martinez, 347 F. Supp. 3d at 686 (quoting Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).  When a court concludes that service is insufficient but curable, the court generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.  See Martinez, 347 F. Supp. 3d at 687 (quoting Pell v. Azar

---

[5] RXO Capacity asserts that this service is not proper, as a matter of law.  See RXO MTD ¶ 26, at 9.  The Court addresses RXO Capacity's legal arguments below.

Nut Co., Inc., 711 F.2d 949, 950 n.2 (10th Cir. 1983)).  The burden of establishing the service's validity, when challenged, is on the party on whose behalf service is made; to challenge service, the party making service must demonstrate that the procedure he employs satisfies the requirements of rule 4's relevant portions and any other applicable provision of law.  See Martinez, 347 F. Supp. 3d at 687 (quoting Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987)).  A party can meet the burden of establishing validity by entering into the record a process server's affidavit identifying the recipient, and when and where service occurred, which requires strong and convincing evidence to overcome.  See Cleaves v. Funk, 76 F.2d 828, 829 (10th Cir. 1935)("[T]he return of an officer was not conclusive, but was prima facie evidence of its truthfulness, which would require strong and convincing proof to overcome."); Durukan Am., LLC v. Rain Trading, Inc., 787 F.3d 1161, 1163 (7th Cir. 2015)("A process server's affidavit identifying the recipient and when and where service occurred is 'prima facie evidence of valid service which can be overcome only by strong and convincing evidence.'" (quoting O'Brien v. R.J. O'Brien & Assocs. Inc., 998 F.2d 1394, 1398 (7th Cir. 1993)); S.E.C. v. Internet Sols. for Bus. Inc., 509 F.3d 1161, 1163 (9th Cir. 2007)(holding that "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence"); Hicklin v. Edwards, 226 F.2d 410, 414 (8th Cir. 1955)("The rule is settled that the officer's return upon the summons imports verity which can be overcome only by strong and convincing evidence."); People's United Equip. Fin. Corp. v. Hartmann, 447 F. App'x 522, 524 (5th Cir. 2011)(stating that the "general rule" is that a signed return of service constitutes prima facie evidence of valid service, which the movant can overcome only by strong and convincing evidence).

## LAW REGARDING SERVICE OF PROCESS

The Federal Rules of Civil Procedure provide the rules for service of process.  See Fed. R. Civ. P. 4.  A plaintiff may serve a defendant by the means that rule 4(h) of the Federal Rules of Civil Procedure lists or by the means the State, in which "the district court is located or where service is made," provides.  Fed. R. Civ. P. 4(h)(1)(a); id. at 4(e)(1).  Under rule 4(h), a party may serve

> a domestic or foreign corporation, or a partnership or other unincorporated association . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and -- if the agent is one authorized by statute and the statute so requires -- by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h), 4(h)(1)(b).

Rule 1-004(G) of the New Mexico Rules of Civil Procedure specifies procedures by which a plaintiff may accomplish service of process on business entities, including limited liability companies.  See N.M. Rules Ann. 1-004(G)(1); Comment to N.M. Rules Ann. 1-004(G).  "New Mexico law permits service to be made upon a designated agent."  Aranda v. Foamex Int'l, 884 F. Supp. 2d 1186, 1212 (D.N.M. July 10, 2012)(Browning, J.)(citing N.M. Rules Ann. 1-004(G)).  Rule 1-004(G)(1)(a) and (c) provide:

> (1)    Service may be made upon:
>
> (a)    a domestic or foreign corporation, a limited liability company or an equivalent business entity by serving a copy of the process to an officer, a managing or a general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process. If the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
>
> . . . .
>
> (c)    an unincorporated association which is subject to suit under a common name, by serving a copy of the process to an officer, a managing or general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process. If the agent is one authorized by law to receive service and the statute so requires, by also mailing a copy to the unincorporated association.

N.M. Rules Ann. 1-004(G)(1)(a), (c).  Rule 1-004(G)(3) allows service by mail on defendants and authorized persons, stating: "Service may be made on a person or entity described in Subparagraph (1) of this paragraph by mail or commercial courier service in the manner provided in Subparagraph (3) of Paragraph E of this rule."  N.M. Rules Ann. 1-004(G)(3).  Pursuant to rule 1-004(E)(3), service by mail is sufficient "provided that the envelope is addressed to the defendant and that the defendant or a person authorized by appointment sign a receipt for the envelope containing the summons and complaint."  Martinez, 347 F. Supp. 3d at 688 (citing N.M. Rules Ann. 1-004(E)(3)).  Rule 1-004(E)(3) states in full:

> Service may be made by mail or commercial courier service provided that the envelope is addressed to the named defendant and further provided that the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope or package containing the summons and complaint, writ or other process.  Service by mail or commercial courier service shall be complete on the date the receipt is signed as provided by this subparagraph. For purposes of this rule "signs" includes the electronic representation of a signature.

N.M. Rules Ann. 1-004(E)(3).

## ANALYSIS

Before the Court are XPO Freight's XPO MTD and RXO Capacity's RXO MTD.  Although the MTD Defendants file separate motions, the arguments that the MTD Defendants make in the XPO MTD and the RXO MTD are substantially the same.  Accordingly, the Court addresses both motions together.[6]  The Court denies both the XPO MTD and the RXO MTD.  First, the Court declines to dismiss the SAC for failure to state a claim, because the SAC relates back to

---

[6] Counsel for XPO Freight and RXO Capacity argues that the XPO MTD and the RXO MTD before the Court as one motion.  See 2026 Tr. at 3:12-13 (Fisher)("I'd say 90 percent are common to both XPO and RXO's respective motion to the dismiss."); id. at 3:20-23 (Fisher)("In light of everyone's time and the commonality of the arguments I will present those to the Court and point out I think the one argument that's a little bit separate for XPO.").

the FAC, and the MTD Defendants have notice of the Plaintiffs' claims before the statute of limitations runs.  Second, the Court concludes that dismissal on the basis of insufficient service is not proper, because the Plaintiffs make a prima facie showing that service is proper, and the MTD Defendants do not present strong and convincing evidence to the contrary.

**I.      THE COURT DOES NOT DISMISS THE SAC AGAINST THE MTD DEFENDANTS, BECAUSE THE PLAINTIFFS STATE A CLAIM UPON WHICH THE COURT CAN GRANT RELIEF AGAINST THE MTD DEFENDANTS AND THE STATUTE OF LIMITATIONS DOES NOT BAR THAT CLAIM.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all of the complaint's well-pled factual allegations, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor.  See Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.").  A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(citing Twombly, 550 U.S. at 555).  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if the court assumes those facts to be true, state a claim to relief that is plausible on its face.  See Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### A.    THE SAC RELATES BACK TO THE FAC.

The Court concludes that the SAC relates back to the FAC, preventing the statute of limitations from barring the Plaintiffs' claims against the MTD Defendants. Rule 15(c) reads:

(1)    *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

    (A)    the law that provides the applicable statute of limitations allows relation back;

    (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or

    (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

        (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

        (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) provides that, "where an amendment would add a party, 'relation back' can occur if the party to be added by the amendment 'has received such notice of the initiation of the action that the party would not be prejudiced in maintaining a defense on the merits.'" Rivero v. Bd. of Regents of Univ. of New Mexico, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *76 (D.N.M. March 7, 2019)(Browning, J.)("Rivero")(quoting Brown v. Uniroyal, Inc., 108 F.3d 1306, 1307 (10th Cir. 1997)), aff'd, 950 F.3d 754 (10th Cir. 2020). "Relation back is dependent upon four factors, all of which must be satisfied." Schiavone v. Fortune, 477 U.S. 21, 29 (1986).

The factors are:

> (i) "the basic claim must have arisen out of the conduct set forth in the original pleading"; (ii) the party to be added "must have received such notice that it will not be prejudiced in maintaining its defense"; (iii) "that party must or should have known that, but for the mistake concerning identity, the action would have been brought against it"; and (iv) "the second and third requirement must have been fulfilled within the prescribed limitations period."

Rivero, 2019 WL 1085179, at *76 (quoting Schiavone v. Fortune, 477 U.S. at 29). "Rule 15(c), which exists to protect defendants from unfair prejudice caused by a plaintiff's tardiness in naming them, applies to pro se complaints as to any others." Pierce v. Amaranto, 276 F. App'x 788, 792 (10th Cir. 2008).[7] In Krupski v. Costa Crociere S.P.A., 560 U.S. 538 (2010)("Krupski"), the Supreme Court of the United States holds that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness on seeking to amend the pleading." Krupski, 560 U.S. at 541. The Supreme Court explains:

> [T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant. To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a "mistake concerning the proper party's identity," a court may

---

[7] Pierce v. Amaranto is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Pierce v. Amaranto has persuasive value with respect to a material issue and assists the Court in its disposition of this Memorandum Opinion and Order.

consider the conduct. Cf. *Leonard v. Parry*, 219 F.3d 25, 29 (C.A.1 2000)("[P]ost-filing events occasionally can shed light on the plaintiff's state of mind at an earlier time" and "can inform a *defendant's* reasonable beliefs concerning whether her omission from the original complaint represented a mistake (as opposed to a conscious choice)"). The plaintiff's postfiling conduct is otherwise immaterial to the question whether an amended complaint relates back.

Krupski, 560 U.S. 553-54.

The Plaintiffs satisfy each of rule 15(c)'s four requirements for relation back. First, the SAC asserts claims arising from the same conduct, transaction, or occurrence that the Plaintiffs allege in the FAC. See XPO Response 12 ("XPOFLI does not dispute that the claims in the SAC arise out of the same conduct, transaction or occurrence as those in the FAC."); Plaintiffs' Response to RXO Capacity Solution at 10, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed January 21, 2026 (Doc. 135)("RXO Response")("RXOCS does not even dispute that Plaintiffs meet the first test for relation back . . . ."). Both pleadings arise from the Accident on October 18, 2021, and the MTD Defendants do not dispute this fact. Compare XPO MTD ¶ 1, at 1-2 (discussing the October 18, 2021, accident); with SAC ¶¶ 12-104, at 3-19 (discussing the October 18, 2021, accident). Second, the MTD Defendants receive notice of the action. See 2026 Tr. at 11:23-12:4 (Court, Fisher)(Q: "Did XPO [Freight] Logistics and RXO Capacity . . . get notice of this lawsuit in some way?" A: "Ultimately, yes.").[8] Rule 15(c) requires notice and not formal service, and nothing before the Court suggests that notice through XPO Logistics and RXO Inc. impairs the MTD Defendants' ability to defend this action. See XPO MTD ¶ 37, at 12 (offering the Court unsupported statements that "XPOLFI would be prejudiced in being forced to defend the allegations asserted against it on the merits . . . ."). Third, the MTD Defendants know,

---

[8] In the FOF, the Court finds that the Plaintiffs serve XPO Logistics and RXO, Inc. through Evilsizor Servers on October 7, 2024. See FOF ¶ 6, at 6.

or at minimum should have known, that the Plaintiffs name them in the FAC but for the mistake concerning the proper parties' identities. The Plaintiffs improperly identify "XPO Logistics, Inc." and "RXO, Inc." as Defendants, because of the volume of "various entities with 'some relation' to the carrier defendant," XPO MTD ¶ 8, at 3-4, when the correct defendants are XPO Freight and RXO Capacity, see XPO MTD ¶ 5, at 2-3 (stating that the Plaintiffs file the FAC with the "improperly named 'XPO Logistics, Inc.' and 'RXO, Inc.' as additional Defendants").[9] The MTD Defendants know of this mistake; in fact, they have "stood by willingly," waiting for the Plaintiffs to serve them. Defendant XPO Logistics Freight, Inc.'s Reply to Plaintiffs' Response to Defendant XPO Logistics Freight, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint ¶ 11, at 4, filed February 4, 2026 (Doc. 137)("XPO Reply").[10] Under Krupski, the relevant inquiry is not

---

[9] The Plaintiffs assert that the four following companies share "'identity of interests'": (i) XPO Logistics, (ii) RXO, Inc., (iii) XPO Freight, and (iv) RXO Capacity. XPO Response at 18-19 (quoting Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 103 (1st Cir. 1979)). See RXO Response at 14-15; SAC ¶ 14, at 3 (stating that XPO, Inc's subsidiaries are XPO Freight and RXO). The Plaintiffs represent that RXO Capacity is formerly known as "XPO Logistics, LLC." RXO Response at 15. See SAC ¶ 16, at 4. This "XPO Logistics, LLC['s]" former "parent company" is the XPO Logistics that receives notice of the FAC through Burns. RXO Response at 15. Additionally, RXO Capacity "is an LLC whose sole member is RXO Corporate Solutions, LLC," and this "RXO Corporate Solutions, LLC['s]" sole member is the RXO, Inc. that receives notice of the FAC through Burns. RXO Response at 15. See SAC ¶ 6, at 2.

XPO Freight's relationship to the other three companies is less concrete. The Plaintiffs represent that XPO Freight's "principal place of business" is co-located with the "'XPO' legal department." XPO Response at 18. From this legal department, Diane Miracle informs the Plaintiffs that their claim involves RXO Capacity. XPO Response at 19. The MTD Defendants do not dispute the Plaintiffs' inference that "Diane Miracle either worked for [XPO Freight], had a business relationship with [RXO Capacity], or that the entities shared a legal department." XPO Response at 19. See XPO Reply at 1-6. In fact, XPO Freight provides no clarification regarding Diane Miracle's relationship to it. See XPO Reply at 1-6. Accordingly, the Court concludes that XPO Freight and RXO Capacity share an identity of interest with XPO Logistics and RXO, Inc. As a result, the Court imputes notice from XPO Logistics and RXO, Inc. to XPO Freight and RXO Capacity.

[10] In the MTD Defendants' words: "XPOLFI has been available for proper service during the entire pendency of this lawsuit, but has yet to be properly served in spite of the repeated chances for Plaintiffs to perfect service." XPO Reply ¶ 10, at 4 (emphasis added). See Defendant RXO

- 15 -

what the Plaintiffs knew or their due diligence, but what the prospective defendants reasonably should have understood.  See 560 U.S. 553-54.  Here, the record demonstrates that the MTD Defendants reasonably should have understood or did understand that the Plaintiffs intend to sue all entities allegedly responsible for the Accident.  Finally, the Plaintiffs satisfy the second and third requirements before the statute of limitations expires on October 18, 2024.  The Court grants leave to file the FAC on September 19, 2024, and the Plaintiffs serve XPO Logistics and RXO, Inc. on October 7, 2024, before the statute of limitations period expires.  See XPO MTD ¶ 5, at 2-3.[11]

### B.    THE MTD DEFENDANTS HAVE NOTICE OF THE PLAINTIFFS' ACTION AT THIS STAGE OF THE LITIGATION.

The MTD Defendants advance two arguments why, notwithstanding the forgoing conclusion, relation back is unavailable.  See XPO MTD ¶¶ 28-34, at 10-12; RXO MTD ¶¶ 28-34, at 10-14.  First, the MTD Defendants contend that relation back does not apply, because the "Plaintiffs failed to properly serve XPOLFI in spite of Plaintiffs' knowledge of the correct entity." XPO MTD ¶ 33, at 11.  Second, the MTD Defendants argue that relation back "should not apply because XPOLFI is an improper party and further, never received notice of the pending action." XPO MTD ¶ 34, at 11.  Neither argument persuades the Court.

The MTD Defendants' first argument improperly inserts into rule 15(c)'s requirements an

---

Capacity Solutions, LLC's Reply to Plaintiffs' Response to Motion to Dismiss Plaintiffs' Second Amended Complaint ¶ 10, at 4, filed February 4, 2026 (Doc. 138)("RXO Reply")("RXOCS has been available for proper service during the entire pendency of this lawsuit, but has yet to be properly served in spite of repeated chances for Plaintiffs to perfect service.")(emphasis added).

[11] The record also indicates that the MTD Defendants are aware even earlier of their potential involvement.  See XPO Response at 17 ("The Court could infer XPOLFI was on notice of its potential involvement in the lawsuit as early as August 2, 2024, the date that 'XPO's' legal department confirmed the lawsuit involved 'RXO.'"); RXO Response at 11.

assessment of the Plaintiffs' diligence in effectuating service. Rule 15(c) requires no such evaluation. As the Supreme Court explains, relation back "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness on seeking to amend the pleading." Krupski, 560 U.S. at 541. Whether the Plaintiffs know the identity of the proper defendants or act diligently in serving them is not dispositive under rule 15(c). Consequently, the MTD Defendants' assertion that the Plaintiffs fail to "enact diligence . . . and *properly* serve the appropriate party . . . ." does not defeat relation back. XPO MTD ¶ 30, at 10-11 (emphasis in the original).

The MTD Defendants' second argument also fails. Relation back turns on whether the prospective defendants "knew or should have known" that the action would have been brought against them but for the Plaintiffs' mistake. Rivero, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *76. As the Court discusses below, the MTD Defendants receive adequate notice. Rule 15(c), unlike rule 12(b)(5), evaluates what the MTD Defendants know and not the form of the notice. See Martinez, 347 F. Supp. 3d at 686. The relevant inquiry is whether the MTD Defendants possess sufficient knowledge of the action to avoid prejudice in defending against the action. See Rivero, No. CIV 16-0318 JB\SCY, 2019 WL 1085179, at *76. Here, the MTD Defendants are aware of the Plaintiffs' claims before the statute of limitations runs and have ample opportunity to prepare their defense. See SAC ¶ 14, at 3 (stating that XPO, Inc's subsidiaries are XPO Freight and RXO Capacity).[12]. In the face of sufficient notice, the MTD Defendants identify no concrete prejudice resulting from the alleged deficiency. Instead, they offer no more than a conclusory invocation of the element "prejudice." XPO Reply at 1-6. Because the Plaintiffs

---

[12] See XPO Response at 15 (discussing email exchange with Diane Miracle who is a "'Legal Assistant II' at 'XPO'"); RXO Response at 11.

satisfy each rule 15(c) requirement, the Court concludes that the SAC relates back to the FAC at the motion-to-dismiss stage.  Accordingly, the statute of limitations does not bar the Plaintiffs' claims against the MTD Defendants.  The Court therefore denies the XPO MTD and the RXO MTD under rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   THE PLAINTIFFS PROPERLY SERVE NOTICE UPON THE MTD DEFENDANTS, BECAUSE RULE 4 OF THE FEDERAL RULES OF CIVIL PROCEDURE DOES NOT REQUIRES THE FULL NAME OF THE PERSON RECEIVING SERVICE FOR SERVICE TO BE PROPER.

The Court concludes that the Plaintiffs properly serve the MTD Defendants.  The MTD Defendants contend that service is ineffective, because "it remains unclear whether an individual authorized to accept service on behalf of XPOLFI actually did so."  XPO MTD ¶ 26, at 9.  See RXO MTD ¶ 26, at 9; see XPO MTD ¶ 27, at 9 ("[T]he Affidavit of Service for XPOLFI does not sufficiently allow Plaintiffs the opportunity to ensure that the proper, authorized individual was in fact served with Plaintiff's Second Amended Complaint."); RXO MTD ¶ 26, at 9.  In support of that argument, the MTD Defendants rely on Roybal v. Roybal, No. 29,806, 2010 WL 3971587 (N.M. Ct. App. Jan. 6, 2010)(unpublished)("Roybal"), for the proposition that, "*if there was no indication in either the record or the memorandum in opposition that the individual who signed for the documents was authorized* by appointment, by law, or by the [applicable] rule, to accept service on the defendant's behalf, proper service was not effectuated."  XPO MTD ¶ 25, at 9 (citing Roybal, No. 29,806, 2010 WL 3971587, at *2)(emphasis and brackets in the XPO MTD but not in Roybal).  See RXO MTD ¶ 25, at 9.  The MTD Defendants' misplace their reliance on Roybal, because the Plaintiffs serve "a general agent or . . . [an] agent authorized by appointment."  N.M. Rules Ann. 1-004(G)(1)(a).

### A.   ROYBAL IS FACTUALLY DISTINCT FROM THE SERVICE THE MTD DEFENDANTS RECEIVE.

The MTD Defendants rely on Roybal to argue that New Mexico law requires the "identification of the actual individuals who was served . . . [for] determining that service was perfected." 2026 Tr. at 9:9-11 (Fisher). In Roybal, the Court of Appeal for New Mexico holds that service is not "effectuated" where a party mailed a "properly addressed" envelope without any indication "that the individual who signed for the documents was 'authorized by appointment, by law or by this rule' to accept service of process . . . ." No. 29,806, 2010 WL 3971587, at *2. There, the plaintiff obtains a default judgment after "mailing copies of the complaint to Defendant's residence and place of business," where an "individual identified only as Dawn Roybal signed for the documents." Roybal, No. 29,806, 2010 WL 3971587, at *1. The Court of Appeals of New Mexico explains: "[W]e find no indication in either the record or the memorandum in opposition that the individual who signed for the documents was 'authorized by appointment, by law or by this rule' to accept service of process on Defendant's behalf." Roybal, No. 29,806, 2010 WL 3971587, at *2 (quoting N.M. Rules Ann. 1-004(G)(3)).

This case presents materially different facts.[13] Here, the Plaintiffs submit affidavits that process servers execute after serving the MTD Defendants' registered agents' employees. See XPO Response at 5 (citing Mitchell Aff.); RXO Response at 5 (citing Bernardo Aff.). Those affidavits constitute prima facie evidence that the Plaintiffs satisfy rule 4 of the Federal Rules of Civil Procedure. See Durukan Am., LLC v. Rain Trading, Inc., 787 F.3d at 1163. In response, the

---

[13] In addition to the factual distinctions, the procedural posture is different. In Roybal, the Court of Appeals of New Mexico is evaluating service, where the plaintiff wins a default judgment in the district court. The Court of Appeals of New Mexico states: "'In exercising discretion to set aside a default judgment, courts should bear in mind that default judgments are not favored and that, generally, causes should be tried upon their merits . . . . Because trial on the merits is preferred, only a slight abuse of discretion is sufficient to justify reversal.'" Roybal, No. 29,806, 2010 WL 3971587, at *1 (quoting Ortiz v. Shaw, 2008-NMCA-136, ¶ 12, 145 N.M. 58, 62, 193 P.3d 605, 609). Here, the Plaintiffs' case is still in the early stages allowing for a "trial on the merits."

MTD Defendants maintain that "it is a reasonable request that Plaintiffs identify the registered agent or authorized individual to accept service . . . ."  XPO Reply at 5 (citing N.M. Rules Ann. 1-004).  See RXO Reply ¶ 11, at 5.  Rule 1-004(G)(1)(a) provides that a claimant may serve a corporation "by serving a copy of the process to an officer, a managing or a general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process."  N.M. Rules Ann. 1-004(G)(1)(a).  The record establishes that the MTD Defendants' registered agent is Registered Agent Solutions, Inc. ("Registered Agent Solutions"), located at 838 Walker Road, Suite 21-2, Dover, Delaware 19904.  XPO Response at 5.  See RXO Response at 5 (RXO Capacity's registered agent Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware).  The record further establishes that Mitchell serves Mark Doe, an intake specialist that Registered Agent Solutions employs, at the registered address.  See Mitchell Aff; Bernardo Aff. (for RXO Capacity, the record establishes that Bernardo serves Jane Doe, an intake specialist that Corporation Service Company employs, at the registered address, which is 51 Little Falls Drive, Wilmington, Delaware).  The Court declines to construe rule 1-004(G)(1)(a) to exclude from the definition of "general agent" the very employees which Registered Agent Solutions employs to receive, as part of its business model, service of process.  Nothing in rule 1-004(G)(1)(a) requires a plaintiff to obtain the employee's full legal name before service becomes effective.  To impose such a requirement would permit corporations to frustrate service by designating a corporate registered agent whose employees decline to disclose their full names.[14]

---

[14] The record, moreover, suggests that the absence of a full name is the MTD Defendants' true objection.  In addition to challenging service upon Mark and Jane Doe, the MTD Defendants challenge service that Peggy Burns accepts, despite Burns giving her full name.  See XPO MTD ¶ 6, at 3; RXO MTD ¶ 6, at 3.  The MTD Defendants argue that service is not proper, because "Peggy Burns was not associated with RXO Capacity Solutions, or any of the RXO or XPO entities."  Affidavit of Van E. Parham III ¶ 2, at 1 (executed May 2, 2025), filed May 2, 2025 (Doc. 103-1)("Parham Aff.").  That argument is unpersuasive.  Burns accepts service on behalf of Evilsizor

### B.  THE PLAINTIFFS PROVIDE PRIMA FACIE EVIDENCE THAT THE DEFENDANTS RECEIVE NOTICE.

The MTD Defendants do not carry their burden of producing the strong and convincing evidence necessary to overcome the Plaintiffs' prima facie showing that service is proper. When a party challenges the validity of service, the party effecting service must demonstrate that the procedure employed satisfies the requirements of rule 4 and any other applicable provision of law. See Martinez, 347 F. Supp. 3d at 687. The Plaintiffs satisfy that burden by submitting the process server's affidavits identifying the recipient, and specifying when and where service occurs, thereby establishing prima facie evidence of valid service. See Durukan Am., LLC v. Rain Trading, Inc., 787 F.3d at 1163. Once the party effecting service meets this burden, that prima facie showing may be overcome only by strong and convincing evidence. See O'Brien v. R.J. O'Brien & Assocs. Inc., 998 F.2d at 1398; S.E.C. v. Internet Sols. for Bus. Inc., 509 F.3d at 1163.

The MTD Defendants offer no evidence that the MTD Defendants do not receive notice. Although they acknowledge the governing standard, see 2026 Tr. at 26:17-19 (Fisher)("I'm cognizant and aware of the case law cited by there was with respect to the burden on the affidavits."), they do not attempt to rebut the process server's affidavits, or otherwise dispute that Registered Agent Solutions employs Mark Doe or that he lacks authority to accept service, see XPO Reply at 1-6. Instead, the MTD Defendants contend only that "the affidavits on their [face] have [a] deficiency with respect to the proper identification of the person served at both of those offices." 2026 Tr. at 26:19-23 (Fisher). The MTD Defendants further acknowledge that they do

---

Servers, which, according to the FMCSR website, serves as the blanket process agent for XPO Logistics. The record therefore demonstrates that the MTD Defendants' objection turns not on the absence of a full name, but on the mistaken premise that the corporate defendant must also know the employee of a designated registered agent. Neither the federal nor the State rules of civil procedure impose such requirement.

not have case law addressing service when the registered agent is a corporation.  See 2026 Tr. 27:10-28:2 (Fisher).   In the absence of evidence rebutting the Plaintiffs' prima facie showing, the MTD Defendants do not carry their burden.  The Court therefore concludes that service upon the MTD Defendants is proper.

**III.   THE COURT WILL REVISIT THE MTD DEFENDANTS' AFFIRMATIVE DEFENSES AT SUMMARY JUDGMENT IF THE EVIDENTIARY RECORD SUPPORT THEIR POSITIONS.**

The case's procedural posture necessarily limits the Court's conclusions.  A motion under rule 12(b)(6) tests only the legal sufficiency of the allegations within the SAC's four corners.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1235 (D.N.M. 2014)(Browning, J.).  A motion to dismiss is not the proper vehicle for resolving questions of fact or weighing the competing evidence.  The Plaintiffs, in the SAC, do not allege the dates or circumstances the service of process, nor do the federal rules require them to do so. See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1235 ("[A] plaintiff is under no obligation to plead specific or identifiable dates at all.").  Thus, because the "time-bar" is not apparent on the face of the SAC, dismissal is not appropriate at the motion-to-dismiss stage. Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1235. Likewise, whether XPO Freight shares an identity of interest with XPO Logistics or RXO, Inc., whether XPO Freight receives notice within rule 15(c)'s meaning, and whether the statute of limitations ultimately bars the Plaintiffs' claims all depend upon facts that are beyond the pleadings; therefore, they are not the proper subject of a rule 12(b)(6) motion..

For those reasons, the Court confines its factual determinations to resolving the XPO MTD and the RXO MTD.  Rule 15(c) directs the Court's inquiry toward what XPO Freight and RXO Capacity know or should know, and when they acquire that knowledge.  That inquiry requires a

full evidentiary record rather than speculation based solely upon notice pleading.  At this stage, the Plaintiffs allege sufficient facts to state plausible claims for relief, and the MTD Defendants do not establish, from the SAC's face alone, that the statute of limitations bars those claims or that service is ineffective as a matter of law.

Accordingly, the Court denies the XPO MTD and the RXO MTD.  Nothing in this Memorandum Opinion and Order, however, forecloses the MTD Defendants from renewing their affirmative defenses after discovery at summary judgment.  Should the evidentiary record demonstrate that the MTD Defendants lack the notice rule 15(c) requires, do not share an identity of interest with the originally named XPO Logistics and RXO, Inc., or otherwise can establish their statute-of-limitations defense, the Court will revisit those issues on a full evidentiary record.

**IT IS ORDERED** that: (i) Defendant XPO Logistics Freight, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint, filed December 29, 2025 (Doc. 129), is denied; and (ii) Defendant RXO Capacity Solutions, LLC Motion to Dismiss Plaintiffs' Second Amended Complaint, filed December 31, 2025 (Doc. 130), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Jane R. Elliott
Jennings Haug Keleher McLeod Waterfall, LLP
Albuquerque, New Mexico

-- and --

Mary E. Eliasen
Penn Kestner & McEwen, PLLC
Fargo, North Dakota

-- and --

Peter Kestner
Penn, Kestner & McEwen, PLLC
Inver Grove Heights, Minnesota

-- and --

Eric Trayce Penn
Penn Kestner & McEwen, PLLC
Jacksonville, Texas

-- and --

Timothy L. White
Valdez & White Law Firm, LLC
Albuquerque, New Mexico

-- and --

Deena L. Buchanan
Salim A. Khayoumi
Buchanan Law Firm, LLC
Albuquerque, New Mexico

*Attorneys for the Plaintiffs*

Seth Sparks
Lauren Chavez
Lauren Taylor Winston
Jessica Wilder
Rodey Dickason Sloan Akin & Robb, PA
Albuquerque, New Mexico

*Attorneys for Defendants EP Expedited Transport, LLC and Rogelio Martinez*

Brian J. Fisher
David C. Larsen
Ryan T. Goodhue
Mayer, LLP
Albuquerque, New Mexico

-- and --

- 25 -

Van E. Parham, III
Mayer, LLP
Dallas, Texas

> *Attorneys for Defendants XPO Logistics, Inc., RXO, Inc., RXO Capacity Solutions, LLC, and XPO Logistics Freight, Inc.*

Rock Safety Solutions, LLC
Laredo, Texas

> *Defendant pro se*